SAMUEL E. FOSTER v. STATE OF NEBRASKA.

FILED JUNE 7, 1907. NO. 15,097.

1. **Criminal Law: CONTINUANCE.** The defendant made an application for a continuance, setting forth fully what he believed the absent witnesses would swear to if present. The state offered to admit that the witnesses, if present, would testify as stated in the affidavit. *Held*, Under the circumstances of the case, that there was no abuse of discretion on the part of the court in overruling the motion for continuance. *Catron v. State*, 52 Neb. 389.

2. ———: **VENUE.** Evidence examined on the question of venue, and *held* to be sufficient to sustain the verdict of the jury that the crime was committed in Keya Paha county.

ERROR to the district court for Keya Paha county: JAMES J. HARRINGTON, JUDGE. *Affirmed.*

*J. A. Douglas*, for plaintiff in error.

*W. T. Thompson, Attorney General*, and *Grant G. Martin*, contra.

LETTON, J.

Samuel E. Foster was convicted in the district court for Keya Paha county of stealing six horses, the property of Stillman O. Lewis, and was sentenced to imprisonment in the pentitentiary. Foster was a dealer and trader in horses who lived in Rock county. Lewis, the owner of the horses, lives in Keya Paha county, a short distance from the South Dakota line, his pasture fence extending to the boundary line. Just north of his place a township is fenced in as a pasture, and is known as the "Laird pasture." Lewis testifies that the last time he saw his horses was in his own pasture on the 30th of March, and upon the first of April, which was Sunday, he testifies he fed them hay. Before this time the Laird pasture fence had been broken down and the horses had been ranging in that pasture, but had been brought back from there about the 19th of March. This testimony is corroborated as to time by Mrs. Lewis, who says she saw the horses in their pasture on the 27th day of March. She fixes this date as being the day when Mr. Lewis took her to Bassett to take the train to Iowa, she having received a message that her mother was seriously ill. Lewis is also corroborated by the testimony of John Lewis, a young man who worked for him in March and April, who said he saw the horses on Friday, the last week in March; that he left the place on Saturday, and came back on Monday, and helped feed them that evening. Lewis apparently did not miss the horses until about the 10th of April, and did not succeed in finding them until early in June, when he found that several of them had been driven to Ord, in Valley county, by Foster and sold there by him. Foster, in accounting for his possession of the horses, testified that about the first of April he, with one Rupert, went to South Dakota to look for some horses belonging to one Smith which were missing; that he stayed all night at a place known as the "Connora ranch"; that while there he met a man called Sloeagle, who asked him and Rupert to drive these

horses, with three others, down to Rock county for him; that he did so, and that afterwards Sloeagle came to Foster's place in Rock county, and that he bought the horses from Sloeagle at that time and took a bill of sale for them, but it is shown that he afterwards made false statements as to how he came into possession of them, and otherwise acted in a manner inconsistent with innocence. It seems that Rupert, the man who was with Foster, afterwards pleaded guilty to stealing these horses in Keya Paha county, but his deposition was taken in this case, and he testifies that the horses were taken from the Laird pasture in South Dakota, and not from the farm of Lewis in Keya Paha county, Nebraska.

The first point made is that the court erred in refusing the application of the defendant for a continuance. The defendant was arrested in July and confined in jail until November, when he procured bail and was released. On December 3 district court convened, and an information was filed, which was quashed upon motion. A new complaint was filed the next day, a preliminary hearing had and an information filed. An application for continuance was then made by the defendant, which set forth specifically the names of certain witnesses and the facts to which they would testify if present in court, together with a showing of diligence upon his part in attempting to procure the evidence. The evidence set forth in the affidavit, if believed, would tend to corroborate the defendant's testimony. It was alleged that the witnesses named would testify that the defendant bought the horses from Sloeagle after having been employed by him to drive the horses from Tripp county, South Dakota, to Rock county, Nebraska; that he was seen by one of the witnesses to pay Sloeagle for the horses; that he had been employed by one Sidney Smith to go into South Dakota and search for certain horses owned by Smith, and that these horses were later found southwest of Springview, in Keya Paha county; and, further, that one Reynolds would testify that in the summer of 1906 Mr. Lewis, the owner of the horses,

told him that his horses were running in the Laird pasture in South Dakota; that he did not miss them until about the 10th of April, and that he supposed the horses were in that pasture until he missed them. Upon this motion being filed, the state admitted that the persons would testify as set forth in the showing, and thereupon the application was denied. The statements of what the witnesses would testify to if present were read in evidence. It does not appear that there was an abuse of discretion on the part of the trial court in this ruling. In the main, the testimony offered was merely corroborative of that of Foster and of Rupert, and was probably considered by the jury of as much weight as if it had been given by deposition. Under our former holdings the ruling was not erroneous. *Catron v. State,* 52 Neb. 389.

The principal contention made by the defendant is that the evidence is not sufficient to show that the horses were stolen in Nebraska. After an examination of the evidence it seems impossible to doubt that the defendant was concerned in the stealing of the horses. If the testimony of the defendant and his witnesses is to be believed, the horses were taken in South Dakota, and he was not guilty of the crime charged, in this state, but the jury were entitled to give more credit to the testimony of Mr. and Mrs. Lewis and John Lewis that the horses were in the Lewis pasture about the 1st of April, than to the story of the defendant's witnesses, even though it is not entirely clear but that it might have been possible for the horses to have strayed into the Laird pasture about that time. It was for the jury to determine which of these witnesses were most worthy of credit, and there is sufficient evidence to sustain the verdict upon the question of venue.

It is contended there was error in admitting the record of the conviction of Rupert for stealing these with other horses. This was done, however, to rebut the statements in his deposition that he had taken them in South Dakota, by showing that he had pleaded guilty to taking them in Nebraska. It may also be said that the sheriff, Cottrel,

when called for the state, was allowed to testify without objection that he took Rupert to the Lincoln pentitentiary, and that Rupert had pleaded guilty to stealing the Raymus horses, and upon cross-examination defendant's counsel drew out the fact that Rupert pleaded guilty to stealing not only the three Raymus horses, but the six Lewis horses, which were included in the information in this case, so that the same fact was already before the jury without objection.

Complaint is made because the court refused certain instructions relating to venue. It is apparent, however, that one of the main issues that was litigated at the trial was whether the horses were taken in Nebraska or South Dakota, and the jury were instructed at defendant's request that one who steals property in another state and brings the same into this state cannot be found guilty of larceny in Nebraska, as well as being instructed by the court upon its own motion that one of the material allegations that the state must prove was that the horses were taken at the time and place alleged in the information. We think the question as to venue was fully understood by the jury.

We find no prejudicial error in the record, and the judgment of the district court is

AFFIRMED.